1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT RAITER,                              No.  2:22-cv-00530-TLN-DB

12                  Plaintiff,

13          v.                                   **ORDER**

14   CITY OF OROVILLE, et al.

15                  Defendants.

16

17          This matter is before the Court pursuant to Defendant City of Oroville's ("Defendant")

18   Motion to Dismiss (ECF No. 7).  Plaintiff Robert Raiter ("Plaintiff") filed an opposition (ECF

19   No. 11), and Defendant replied (ECF No. 14).  For the reasons set forth below, the Court

20   GRANTS Defendant's motion to dismiss with leave to amend.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              1

1          **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2          Plaintiff was employed by Defendant as an officer starting in 2015.[1]  (ECF No. 1 at ¶¶ 4,

3    34.)  Around June 2020, after Plaintiff reported incidences of sexual harassment and improper

4    conduct involving Lieutenant Gil Zarate, Lt. Zarate began to exhibit disrespectful and retaliatory

5    behavior toward Plaintiff.  (*Id.* at ¶¶ 6, 9.)  Plaintiff filed a formal grievance and was subsequently

6    removed from specialty assignments.  (*Id.* at ¶¶ 14, 15.)  Around July 2020,[2] Plaintiff interviewed

7    with another Sheriff's office where he revealed that "he had sex with his then girlfriend when he

8    was on break during one of his shifts."  (*Id.* at ¶ 18.)  Plaintiff believed this was consistent with

9    the culture of the Department.  (*Id.* at ¶ 19.)  Indeed, Plaintiff cited several incidents of sexual

10   misconduct in the Department, including incidents involving Chief Joe Deal engaging in sexual

11   conduct while on shift.  (*Id.*)

12         On August 5, 2022, Plaintiff met with Chief Deal to discuss Plaintiff's issues with Lt.

13   Zarate.  (*Id.* at ¶21.)  Chief Deal was known to pressure department members to hire his wife as a

14   realtor.  (*Id.* at ¶22.)  During this meeting, Chief Deal attempted to pressure Plaintiff to do the

15   same, but Plaintiff did not comply.  (*Id.*)  Then on August 10, 2020, Chief Deal removed all of

16   Plaintiff's scheduled overtime hours, changed Plaintiff's work schedule, and made Lt. Zarate

17   Plaintiff's supervising officer.  (*Id.* at ¶24.)  On August 20, 2020, Chief Deal gave Plaintiff notice

18   of a disciplinary action for a traffic collision Plaintiff was involved with in May 2020, despite

19   Chief Deal previously informing Plaintiff nothing would come of the collision.  (*Id.* at ¶ 25.)  On

20   August 20, 2020, Plaintiff submitted a *Skelly* notice detailing Chief Deal's retaliatory acts.[3]  (*Id.*

---

21   [1]      In his Complaint, Plaintiff does not specifically allege his termination date.  He states a
22   "Final Note of Discipline issued on May 13, 2021," but does not indicate if that constituted his
     date of termination.  (ECF No. 1 at ¶ 34.)  Therefore, it is unclear whether the proceedings at
23   issue here were pre-termination or post-termination.  This lack of clarity is further addressed
     below.
24
25   [2]      In his Complaint, Plaintiff says he applied for the new Sheriff's position in "July of 2022."
     (ECF No. 1 at ¶ 18.)  However, Plaintiff also says he was terminated in 2021 and withdrew his
26   application around August 2020.  (*Id.* at ¶¶ 21, 34.)  The rest of the facts appear more consistent
     with the July 2020 date.
27
28   [3]      A "*Skelly* notice" "derives its name from a California Supreme Court decision holding that
     permanent employees of the state of California have a property interest in the continuation of

at ¶ 27.)  Plaintiff later met with Butte County District Attorney, Mike Ramsey, to discuss illegal

acts and corruption at the Oroville Police Department; Plaintiff specifically named illegal acts

Chief Deal committed.  (*Id.* at ¶ 28.)  On October 1, 2020, Chief Deal told Lt. Zarate that he was

going to "get rid" of Plaintiff.  (*Id.* at ¶ 30.)

Defendant brought a disciplinary action against Plaintiff for: "(1) Having sexual relations

with his significant other while he was on break; (2) Not wearing a mask during a traffic stop; and

(3) An alleged traffic collision that [Plaintiff] was involved in."  (*Id.* at ¶ 32.)  Chief Deal

conducted the ensuing investigation and Ruth Wright, the Finance Director, was the *Skelly*

hearing officer during the resulting proceedings.  (*Id.* at ¶¶ 33–34.)

Plaintiff filed this action on March 22, 2022, seeking to recover from the City of Oroville

under 42 U.S.C. § 1983 ("§ 1983"), the Fair Employment and Housing Act (California

Government Code § 12900 *et seq.*), and California Labor Code § 1102.5.  (ECF No. 1 at 11–12.)

Defendant filed the instant motion to dismiss on May 24, 2022.  (ECF No. 7.)

## II.    STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under

Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

"a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citation and quotations omitted).  "This simplified notice pleading standard relies on liberal

---

their employment of which they cannot be deprived without due process."  *Maner v. Cnty. of
Stanislaus*, No. 114CV01014DADMJS, 2016 WL 4011722, at *3 n. 4 (E.D. Cal. July 27,
2016), *aff'd*, 725 F. App'x 485 (9th Cir. 2018) (citing *Skelly v. State Personnel Board*, 15 Cal. 3d
194, 206 (1975)).  In *Skelly*, the Court held that there are minimum procedural due process
requirements when depriving someone of their property interest in the continuation of their
employment: "notice of the proposed action, the reasons therefor, a copy of the charges and
materials upon which the action is based, and the right to respond, either orally or in writing, to
the authority initially imposing discipline."  15 Cal. 3d at 215.

1  discovery rules and summary judgment motions to define disputed facts and issues and to dispose

2  of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

3       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

4  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

5  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

6  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

7  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

8  relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

9       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

10  factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

11  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

12  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

13  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

14  elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

15  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

16  statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

17  are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355

18  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

19  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

20  in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

21  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

22       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

23  facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

24  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

25  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

26  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

27  than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility

28  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

1  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

2  her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

3  dismissed.  *Id.* at 680 (internal quotations omitted).

4      In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

5  thereto, and matters which may be judicially noticed pursuant to federal Rule of Evidence 201.

6  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. V.*

7  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

8      If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

9  amend even if no request to amend the pleading was made, unless it determines that the pleading

10  could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

11  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

12  *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

13  denying leave to amend when amendment would be futile).

14      **III.   ANALYSIS**

15      Defendant moves to dismiss Claim One of the Complaint as well as Plaintiff's request for

16  punitive damages.  (ECF No. 7-1 at 3, 6.)  Plaintiff does not oppose dismissal of the request for

17  punitive damages.  (ECF No. 11 at 2.)  Accordingly, Defendant's motion to dismiss Plaintiff's

18  request for punitive damages is GRANTED with prejudice.  Plaintiff, however, does oppose

19  dismissal of Claim One.  (*Id.*)

20      As to Claim One, Plaintiff brings a claim against Defendant under § 1983 for "violation of

21  civil rights" by depriving Plaintiff of his right to procedural due process.  (ECF No. 1 at 11.)

22  Defendant moves to dismiss Claim One arguing that Defendant followed the requirements of due

23  process to which Plaintiff was entitled under *Skelly*.  (ECF No. 7-1 at 3.)  In opposition, Plaintiff

24  appears to concede that Defendant followed "timelines and non-substantive procedures."  (ECF

25  No. 11 at 8.)  However, Plaintiff argues because Chief Deal was biased and the hearing officer

26  "rubber stamped" Chief Deal's "investigative findings" for Plaintiff's *Skelly* hearing, Chief Deal

27  was the "de facto [*sic*]" decisionmaker, thus depriving Plaintiff of his due process rights.  (ECF

28  No. 11 at 6, 8.)  In reply, Defendant argues "Chief Deal's alleged bias and investigation are

1  immaterial to whether Plaintiff's due process rights were violated" and any allegations that the

2  decision was "rubber stamped" are conclusory.  (ECF No. 14 at 4.)

3       Procedural due process is owed when there is a deprivation of property, which is defined

4  by state law.  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Under California law, a

5  permanent employee, dismissible only for cause, has a property interest in their continued

6  employment.  *Skelly*, 15 Cal. 3d at 207–208.  "Precisely what procedures the Due Process Clause

7  requires in any given case is a function of context . . . due process is not a technical conception

8  with a fixed content unrelated to time, place and circumstances . . . [r]ather, it is flexible and calls

9  for such procedural protections as the particular situation demands."  *Brewster v. Bd. of Educ. of*

10  *Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) (internal quotation marks and

11  citations omitted).  Generally, the determination of which procedures satisfy due process in a

12  situation depends on balancing the private interest affected by the official action, the risk of

13  erroneous deprivation of the interests and the value of alternative procedures, and the government

14  entity's interest.  *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

15       A court may also look to what procedures are required under state law when evaluating a

16  federal due process claim.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("Our

17  holding rests in part on the provisions in Ohio law for a full post-termination hearing.").  Under

18  the California statutory scheme, if the initial decision is appealed, post-termination hearings must

19  be provided.  *Skelly*, 15 Cal. 3d at 205; Cal. Gov't Code § 19578 (2009).  California additionally

20  requires "[m]inimal standards of due process [] that a public employee receive, prior to

21  imposition of discipline: (1) [n]otice of the action proposed[;] (2) the grounds for discipline[;] (3)

22  the charges and materials upon which the action is based[;] and (4) the opportunity to respond in

23  opposition to the proposed action. . . . The right to respond must afford the employee an

24  opportunity to present his side of the controversy before a reasonably impartial and noninvolved

25  reviewer who possesses the authority to recommend a final disposition of the matter."  *Titus v.*

26  *Civil Serv. Com.*, 130 Cal. App. 3d 357, 362–63 (1982).

27       There are two types of termination hearings: pre-termination hearings and post-

28  termination hearings.  A pre-termination hearing is required but "need not be elaborate" as it is

"an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges are true and support the proposed action." *Loudermill*, 470 U.S. at 545–546.  At a pre-termination hearing, a plaintiff is only entitled to notice and an opportunity to respond.  *Id.* at 546.  While a pre-termination hearing is required, post-termination hearings can lessen the amount of process the state must provide pre-termination.  *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 332 (9th Cir. 1995).

In the instant case, the parties do not dispute that Plaintiff has a property interest in his continued employment and was therefore owed due process upon his termination.  However, as noted above, it is unclear if the proceeding at issue in the instant case was pre- or post-termination.  In other words, it is unclear whether Plaintiff asserts he was deprived of due process during a pre-termination hearing or during a post-termination hearing, and Defendant provides no additional commentary or clarification on the matter.  Further compounding the confusion is the fact that there are no allegations in the Complaint or discussion in the parties' briefing regarding the existence or non-existence of any additional proceedings.  (*See* ECF Nos. 1, 7-1, 11, 14.)

These missing facts are critical in this case because Plaintiff appears to take issue with one aspect of his *Skelly* proceedings: whether he was provided a "reasonably impartial and noninvolved reviewer who possesses the authority to recommend a final disposition of the matter."  (ECF No 11. at 8); *Titus*, 130 Cal. App. 3d at 362–63.  However, the Court cannot assess whether Plaintiff was adequately provided a reasonably impartial and noninvolved reviewer because any due process determination depends on whether this was a pre- or post-termination hearing.  This is because "'the existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures.'"  *Trevino v. Lassen Mun. Util. Dist.*, No. 07-cv-2106 DAD, 2009 WL 385792, at *9 (E.D. Cal. Feb. 13, 2009), *amended*, No. 07-cv-2106 DAD, 2009 WL 982006 (E.D. Cal. Apr. 6, 2009) (citing *Loudermill*, 470 U.S. at 547 n.12).  "[T]he decisionmaker in a pre-termination hearing need not be impartial, so long as an impartial decisionmaker is provided at the post-termination hearing."  *Clements*, 69 F.3d at 333.  At the pre-termination stage, Plaintiff is only entitled to notice and an opportunity to respond, not a neutral hearing officer.  *Loudermill*, 470 U.S. at 546.  Accordingly, for the Court to determine if

1   there was adequate due process in this case, the Court must take into consideration whether there

2   were pre- and post-termination proceedings, if Plaintiff appealed a pre-termination decision, and

3   what process was followed during both proceedings.  Since Plaintiff has not alleged any facts to

4   clarify what type of proceedings he was provided and when, Plaintiff has not alleged enough facts

5   to state a viable claim.

6          Additionally, Plaintiff argues that Chief Deal's involvement in the investigation before his

7   hearing deprived Plaintiff of his due process rights because of Chief Deal's bias.  (ECF No. 11 at

8   7.)  However, Plaintiff has not cited, nor can the Court find any authority to support his argument

9   that the investigator must be unbiased to satisfy his due process rights.  *See Peterson v. Johnson*,

10  No. 16-cv-00240-AGJ, 2018 WL 5874403, at *9 (C.D. Cal. July 10, 2018) (finding that due

11  process does not impose a duty to conduct an independent investigation nor had the plaintiff cited

12  any authority for this contention).

13         Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's § 1983 claim

14  with leave to amend.[4]

15      **IV.   CONCLUSION**

16         For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss (ECF No.

17  7) Plaintiff's claim for punitive damages with prejudice and Claim One of the Complaint with

18  leave to amend.  Plaintiff may file an amended complaint not later than thirty (30) days from the

19  electronic filing date of this Order.  Defendants shall file a responsive pleading not later than

20  twenty-one (21) days after Plaintiff files an amended complaint.  If Plaintiff opts not to file an

21

22  [4]      The Court notes that Plaintiff appears to take issue with one aspect of his *Skelly*
    proceedings: whether he was provided a "reasonably impartial and noninvolved reviewer who
23  possesses the authority to recommend a final disposition of the matter."  (ECF No 11. at 8); *Titus*,
    130 Cal. App. 3d at 362–63. *See Skelly*, 15 Cal. 3d.  In his Complaint, Plaintiff alleges the Final
24  Notice of Discipline "merely rubber-stamped the 'investigation findings' made by Chief Deal,
    who was [*sic*] biased."  (ECF No. 1 at ¶34.)  Based on these facts, Plaintiff argues that Chief
25  Deal, not Ruth Wright, the hearing officer, was the "de facto[] ultimate decision make[r]" in the
    *Skelly* hearing.  (ECF No. 11 at 8).  However, as Defendant argues, Plaintiff has not alleged any
26  specific facts claiming that Wright was biased or that her decision was influenced in any way.
    (ECF No. 14 at 3–4.)  Plaintiff's allegations about Chief Deal's influence over Wright are merely
27  conclusory.  Thus, any amended complaint should seek to remedy this deficiency.

28

amended complaint, the Complaint will proceed as to the remaining claims in the Complaint (Claims Two and Three) and Defendant shall file an answer not later than twenty-one (21) days from Plaintiff's deadline for filing an amended complaint.

IT IS SO ORDERED.

**Date:  March 30, 2023**

Troy L. Nunley
United States District Judge